UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DARIUS O. GREY,

    Plaintiff,

v.

LIEUTENANT BARNHART,
CASE MANAGER TERESA YATES and
LAUREN BEITZEL,

    Defendants.

Civil Action No. 24-3052-TDC

**MEMORANDUM OPINION**

Self-represented Plaintiff Darius O. Grey, who is currently incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil action pursuant to 42 U.S.C. § 1983 in which she alleges constitutional violations arising from her placement in administrative segregation and the denial of treatment for gender dysphoria. Defendants Lieutenant David Barnhart, Case Manager Teresa Yates, and Lauren Beitzel have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which is fully briefed. Defendants have also filed a related Motion for Leave to File Excess Pages and Motion to Seal, which will both be granted. Grey has filed a Motion for Appointment of Counsel. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Defendants' Motions will be GRANTED, and Grey's Motion will be DISMISSED AS MOOT.

## BACKGROUND

### I. Administrative Segregation

On July 22, 2021, Plaintiff Darius O. Grey, a transgender woman formerly known as Darius O. Glover, was attacked at NBCI by two gang members armed with knives. She was stabbed 27 times. Grey was held in administrative segregation for six days until an adjustment hearing on July 28, 2021. Because she had a weapon for protection at the time of the incident, Grey was sentenced to 45 days in disciplinary segregation. After serving this sentence, Grey was returned to administrative segregation.

Around that time, Lt. David Barnhart, who served in the Intelligence and Investigative Division at NBCI, opened an investigation and determined that Grey and the two gang members were enemies. Grey was then placed in administrative segregation indefinitely by Lt. Barnhart and Teresa Yates, an NBCI case manager. Grey alleges that at the time that she filed the Complaint, she had been in segregation for 39 months during which she could not attend school, have a work assignment, attend group programs, or earn security points. In the Complaint, Grey alleges that Lt. Barnhart and Yates are holding her in administrative segregation without meaningful review, in violation of her rights to due process and equal protection of the law under the Fourteenth Amendment to the United States Constitution.

### II. Gender Dysphoria

Grey alleges that she has severe gender dysphoria for which she has sought treatment from the psychology staff at NBCI. According to Grey, Lauren Beitzel, a Mental Health Professional Counselor Advanced employed by the Maryland Department of Public Safety and Correctional Services ("DPSCS") and assigned to the NBCI security housing unit, has questioned her gender identity, denied her gender dysphoria, mocked and ridiculed her efforts to obtain gender dysphoria

treatment, and rejected her requests for treatment. Grey alleges that she submitted numerous sick call requests seeking gender dysphoria treatment, but all were denied.

Defendants have submitted records demonstrating that on February 2, 2024, following requests by Grey for gender dysphoria treatment, Beitzel consulted with the Gender Dysphoria Committee, which concluded that Grey did not meet the criteria for an assessment by Dr. Chris Kraft, the Director of the Clinical Services, Sex, and Gender Clinic at Johns Hopkins University and the gender dysphoria expert who conducts consultations and assessments of gender dysphoria and other gender identity issues for DPSCS. Nevertheless, on February 16, 2024, Beitzel consulted with Dr. Kraft, who confirmed that there was no need to evaluate Grey for gender dysphoria. Later, Beitzel arranged for Dr. Kraft to conduct a formal evaluation of Grey. On August 9, 2024, following that evaluation, Dr. Kraft concluded that Grey does not meet the criteria for gender dysphoria.

In the Complaint, Grey alleges that Beitzel and the NBCI psychology staff, by failing to address her gender dysphoria issues appropriately, have acted with deliberate indifference to a serious medical need, in violation of the Eighth Amendment to the Constitution and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Grey seeks damages as well as declaratory and injunctive relief. Specifically, she seeks access to a gender dysphoria expert, gender affirming care, mental health care, and a transfer out of NBCI.

### III. Administrative Remedy Procedure Complaints

In support of their Motion, Defendants have submitted the Administrative Remedy Procedure complaints ("ARPs") filed by Grey between July 2021 and October 18, 2024, when this case was initiated. NBCI Correctional Case Management Specialist John White attests in a declaration that the submitted ARPs are a complete record of those filed by Grey except for ARP

3

No. NBCI-1644-24, which could not be located. During this period, Grey filed eight ARPs regarding either her placement in administrative segregation or her gender dysphoria. Grey has filed appeals of three ARPs arising out of NBCI to the Commissioner of Correction: No. NBCI-0315-20, No. NBCI-1535-24, and No. NBCI-0545-25. Grey filed a fourth appeal to the Commissioner on July 25, 2024, but that appeal could not be processed because it was unclear which of the two attached ARPs, both of which related to gender dysphoria issues, was the subject of the appeal.

According to a declaration from the Director of the Incarcerated Individual Grievance Office ("IIGO"), a search of the IIGO's records revealed that Grey has filed only one complaint or appeal to the IIGO. That filing, IGO No. 20241330, was submitted on December 9, 2024 and consists of an appeal of ARP No. NBCI-1559-24, which was an October 13, 2024 complaint that Lt. Barnhart was not available to discuss an unspecified matter with Grey relating to a threat to her safety. Grey did not file any IIGO complaints prior to the initiation of the present Complaint on October 18, 2024.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. Defendants argue that their Motion should be granted because (1) Defendants are immune from suit in their official capacities under the Eleventh Amendment to the Constitution; (2) Grey has failed to state an Eight Amendment claim against Beitzel; (3) Grey has failed to state claim under the Rehabilitation Act; (4) Grey has failed to exhaust administrative remedies; (5) Grey is not entitled to a work assignment or the ability to earn diminution credits; (6) Grey fails to state Fourteenth Amendment claims against Lt. Barnhart and Yates, (7) Lt. Barnhart and Yates are entitled to summary judgment on those claims; (8) Grey's

segregation assignment did not violate her Eighth Amendment rights; (9) Defendants are entitled to qualified immunity; and (10) Grey is not entitled to injunctive relief.

I.   **Legal Standards**

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and attached exhibits for consideration. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any documents attached to the pleading. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the

nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). In the memorandum in opposition to the Motion, Grey does not assert that summary judgment is premature or that she needs certain discovery in order to oppose the Motion. The Court will therefore construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## II. Exhaustion of Administrative Remedies

Defendants assert that the Complaint should be dismissed because Grey failed to exhaust administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

In Maryland prisons, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See* Md. Code Ann., Corr. Servs. §§ 10–201 to 10–210 (LexisNexis 2025); Md. Code Regs. 12.02.28.02(B)(1) (2025) (defining the ARP). First, a prisoner must file a complaint with the warden of the prison within 30 days of the incident or when

the prisoner gains knowledge of the injury giving rise to the complaint. *See* Md. Code Regs. 12.02.28.09(B), 12.02.28.05(D). Second, if the complaint is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. Md. Code Regs. 12.02.28.14. If the appeal is denied, the prisoner must appeal within 30 days to the IIGO. *See* Md. Code Ann., Corr. Servs. § 10–206; Md. Code Regs. 12.02.28.18, 12.07.01.05. Inmates may seek judicial review of the IIGO's final determinations in a Maryland circuit court. Md. Code Ann., Corr. Servs. § 10–210.

Generally, an inmate may use the ARP to address complaints about "[m]edical and mental health services." Md. Code Regs. 12.02.28.04(A)(2). For complaints about "case management" decisions including housing assignments, the ARP process is generally not available, Md. Code Regs. 12.02.28.04(B)(1), but an inmate may file a formal appeal of such a matter directly to the IIGO. Md. Code Regs. 12.02.24.02(E), (G). The NBCI Inmate Handbook, which was provided to Grey, specifically advises that a housing assignment, such as to administrative segregation, may be appealed in this way.

Here, regardless of whether Grey could properly use the ARP process to seek redress of his complaints about administrative segregation, the record shows that prior to filing suit, Grey failed to file any appeals or complaints with the IIGO about this issue, whether as an appeal from the denial of an ARP or as a formal appeal under Md. Code Regs. 12.02.24.02(G). Likewise, she also did not appeal any of the ARPs relating to the failure to address her gender dysphoria to the IIGO and receive a ruling on such an appeal prior to filing suit. *See Horton v. Kopp*, No. PWG-16-3086, 2018 WL 1243537, at *6–7 (D. Md. Mar. 9, 2018) (dismissing claims of a failure to provide psychological care against Beitzel and other NBCI psychological staff based on the failure to exhaust administrative remedies). In any event, the Court notes that, as discussed above, Beitzel, in fact, referred Grey's requests for gender dysphoria treatment to the Gender Dysphoria

8

Committee and to Dr. Kraft, who conducted an evaluation of Grey and concluded that Grey did not meet the criteria for gender dysphoria, such that the record does not support a finding that she acted with deliberate indifference to Grey's asserted gender dysphoria issues.

Regardless of whether Grey eventually exhausts administrative remedies during the pendency of her suit, her failure to complete the administrative processes before filing the Complaint requires dismissal. *See Jones v. Bock,* 549 U.S. 199, 202 (2007) (stating that "the PLRA . . . requires prisoners to exhaust prison grievance procedures before filing suit"); *Germain v. Shearin,* 653 F. App'x 231, 234 (4th Cir. 2016) (finding that "[e]xhaustion has not occurred . . . when an institution's appeal process necessarily must continue after the filing of the complaint," and that where the plaintiff "failed to exhaust his claims prior to initiating this suit," dismissal was "mandatory"); *Freeman v. Francis,* 196 F.3d 641, 645 (6th Cir. 1999) (holding that the court "must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed" because "the plain language of the statute makes exhaustion a precondition to filing an action in federal court").

Accordingly, the Court will grant the Motion based on the failure to exhaust administrative remedies. Although Defendants requested summary judgment, and the Court has considered evidence attached to the Motion in resolving it, the proper ruling based on a failure to exhaust is dismissal without prejudice. *See Moss v. Harwood,* 19 F.4th 614, 623 n.3 (4th Cir. 2021); *Germain,* 653 F. App'x at 234–35 (finding dismissal "mandatory" for failure to exhaust and affirming a district court's grant of summary judgment but modifying the order to be dismissal without prejudice).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment will be GRANTED, and this case will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date: February 19, 2026

THEODORE D. CHUANG
United States District Judge